Submitted on Briefs October 31, decided December 24, 1912; modified on rehearing January 14, 1913.

**BOARD OF DIRECTORS *v.* PETERSON.**

(128 Pac. 837.)
(129 Pac. 123.)

Waters—Irrigation District—Validity of Contract.

1. The contract of an irrigation district to purchase a pumping plant, by which it agreed with the seller as to the basis of the amount of bonds needed, and bound itself to complete the purchase as soon as it could legally do so after the approval of the State Engineer, and then without delay to call an election for voting the bonds required to pay for the pumping plant, though dependent on the approval of the State Engineer and the election, was not thereby rendered ultra vires.

Waters—Issue of Bonds—Election Notice.

2. Under the statute (Sections 6167-6217, L. O. L., as amended by Laws 1911, pp. 378-404), which fixed 11 years as the shortest period in which bonds of an irrigation district should mature, and provided that the directors of the district might, in their discretion, issue bonds so that they would commence to mature in 11 years, instead of 21, a notice of a special election in the district to determine whether the bonds should be issued was not fatally defective because of a statement therein that the proposed bonds should commence to mature seven years from the date of issue, since that question was not for the voters.

Waters—Irrigation District—Sale of Bonds—Validity of Agreement.

3. Under Section 6184, L. O. L., authorizing the directors of an irrigation district, without offering its bonds for sale to the highest bidder, to use them at par for the purchase or con-

struction of reclamation works, the taking over of property upon delivery of the bonds at par, under a void agreement, would be legal and valid.

**Waters—Irrigation District—Change in Boundaries—Sufficiency of Description.**

4. In enlarging the boundaries of an irrigation district, the description of the added territory by legal subdivisions of the United States Government survey, with reference to the exterior lines of section subdivisions, and not by actual boundary survey, was sufficient.

**Municipal Corporations—Creation—Status as Corporation.**

5. A municipal corporation, such as a city, has a two-fold character; one function being governmental, in which it is the agent of the State, the other proprietary, or private, for the purpose of providing local necessities and conveniences for the community.

**Municipal Corporations—Creation—Quasi Municipal Corporations —Status as Corporation.**

6. Quasi municipal corporations, such as road districts and school districts, are governmental and exercise their powers as auxiliaries of the State, and in that sense are public, though without legislative powers; but all persons within their boundaries are subject to their authority and burdened or benefited by their acts and entitled to a voice in the selection of officers.

**Waters—Irrigation District—Qualification of Voters—Statutory Provisions—"All Elections."**

7. Section 2, Article II, of the Constitution, which provides that in "all elections," not otherwise provided for by the constitution, every white male citizen 21 years of age, with certain residence qualifications, shall be entitled to vote, while intended to apply to the election of constitutional officers, contemplates only elections for officers by whose acts all the people within a district are to be affected, and does not extend to an irrigation district, in which only the land owners have any interest and in which a nonresident owner has the same interest as a resident owner; and hence Section 6168, L. O. L., as amended by Laws 1911, pp. 378-404, providing that any person, male or female, of the age of 21 years, whether a resident or not, who is a bona fide holder of land situated in it, may vote at an election, is not in conflict with the constitution, and an election thereunder was valid.

    8. Under Section 6168, L. O. L., relating to the organization of irrigation districts, as amended by Laws 1911, p. 380, which provides that on the final hearing the court shall make and enter an order determining whether the requisite number of land owners within the proposed district shall have petitioned for the formation thereof, and whether the petition had been duly published, which shall be conclusive evidence of the facts found, a full and complete order of the county court determining such facts is prima facie sufficient in the circuit court to establish such facts, and to sustain a decree of the circuit court.

From Malheur:  DALTON BIGGS, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is a suit by the Board of Directors of the Payette-Oregon Slope Irrigation District for an adjudication as to the legality of the organization of the district, against L. E. Peterson.

The petitioner herein has attempted to organize an irrigation district, and to issue bonds for the purpose of constructing or purchasing reclamation works, under chapter 7, title 41, being Sections 6167-6217, L. O. L., as amended, Laws of 1911, pp. 378-404; and it brings this suit for the purpose of securing an adjudication by the court, under Sections 29, 30, 31, of the Amendatory Act (Laws of 1911, p. 401), as to the regularity and legality of the organization of the district and of the proceedings of its board of directors in providing for the issue and sale of the bonds of the district, in which proceedings the court is required to determine the regularity and legality of every step taken in the organization of the district and by its board of directors and all other proceedings which may affect the legality or validity of said bonds. The petition recites the facts as to each step taken in these proceedings. The requirements of Sections 29, 30, 31, of the Amendatory Act (Laws of 1911, p. 401), as to the manner of conferring jurisdiction upon the circuit

court to determine the regularity and legality of the proceedings, have been fully complied with, and we adopt the findings of fact Nos. 1 and 2 made by the circuit court as the findings of this court in relation thereto. No appearance was made by any one to contest this proceeding except by L. E. Peterson, who questions its regularity on the grounds (1) that the contract for the purchase of its irrigation system from the Snow-Moody Development Company was *ultra vires*; (2) that the notice calling for the special election for the issue of bonds was ineffectual; (3) that the bonds could be sold only pursuant to public advertisement of the sale; (4) that the change of the boundaries of the district was irregular and void; (5) that the law is unconstitutional and void, in that the qualifications of the electors provided for in the act are in conflict with Section 2, Article II, of the constitution. At the trial of the case in the circuit court, the only evidence produced was the record of the county court made in the organization of the district and the record of the proceedings of the board thereafter, including notices and proofs of service thereof. The circuit court made findings that all the proceedings had by the petitioner under the statute were regular and valid, and rendered a decree to that effect, and defendant appeals.                      AFFIRMED.

Submitted on briefs under the proviso of Rule 18 of the Supreme Court. 60 Or. 622 (117 Pac. XI).

For appellant there was a brief over the names of *Mr. John W. McCulloch.*

For respondent there was a brief over the names of *Messrs. Richards & Haga.*

Opinion by MR. CHIEF JUSTICE EAKIN.

1. First, it is contended that the contract for the purchase of the pumping plant was *ultra vires,* for the reason

that the district could not purchase a plant until the plan of the proposed acquisition of works had been outlined, approved by the State Engineer, and authorized by the electors. The board did formulate a general plan of its proposed works and the plan for the acquisition thereof by resolution adopted at the meeting of April 27, 1912. There was no contract consummated at that time, although the terms for the purchase were agreed upon with the Snow-Moody Irrigation Company as a basis upon which to determine the amount of bonds needed; but the purchase was not completed until these things were accomplished, as appears by paragraph 7 of the contract, to wit:

"The party of the second part hereby agrees to purchase said pumping plant and irrigation system for the consideration aforesaid, and to comply with all the terms and conditions herein by it to be kept and performed, and as soon as it can legally do so after the receipt of a favorable report from the State Engineer of the State of Oregon for the acquisition of said pumping plant and irrigation works, it will without delay call an election in the form and manner required by the laws of Oregon for voting the bonds required to pay for said pumping plant and irrigation works, but the entire bond issue shall in no event exceed the sum of two hundred seventy-six thousand dollars ($276,000.00)."

2. (2) Neither is the notice of the special election to determine whether the bonds should be issued fatally defective by reason of the statement therein that the proposed bonds shall commence to mature seven (instead of 11) years from the date of issue. The law fixes the shortest period in which they may be made to mature at 11 years, and provides that "the board of directors may in its discretion issue said bonds so that they shall commence to mature in 11 years instead of 21 years." That question was not properly for decision by the voters, and therefore the error in the notice was not prejudicial.

3.  (3)  It is also contended that the bonds should have been sold to the highest bidder after 30 days' advertisement thereof, and that the proviso of Section 6184, authorizing the board, without offering the bonds for sale to the highest bidder, to use the bonds at par for the purchase of reclamation works or for construction thereof, was not available, as the contract under which it was attempted to deliver the bonds was void, having been entered into prior to the authorization of the bonds and prior to the approval of the purchase by the State Engineer.  In answer to this objection, it is sufficient to say that no contract of purchase had been made, but if a void agreement of purchase had been made, after the property was lawfully taken over upon the delivery of the bonds at par, the transaction would be legal and valid within the proviso.

4.  (4)  In enlarging the boundaries of the district by taking in adjacent territory, the description thereof by legal subdivisions of the United States Government survey discloses the enlarged boundaries as fully and completely as any survey or description could possibly do; in fact, the original boundaries are given by reference to the exterior lines of the section subdivisions, and not by actual boundary survey.

(5)  However, a more serious question remains to be considered, namely, as to the qualifications of electors within said district; it being contended that, if the organization is municipal, the qualifications of its electors are those prescribed by Section 2, Article II, of the Constitution.  The law providing for the organization of irrigation districts in Oregon was first enacted in 1895 (Laws of 1895, p. 13), and was adopted from the California act of 1887, known as the Wright Act, which was an innovation in municipal organization.  A similar law has since been adopted by the State of Idaho.  In *Turlock Irrigation District* v. *Williams,* 76 Cal. 360 (18 Pac. 379),

and in *Re Madera Irrigation District,* 92 Cal. 296 (28
Pac. 272, 675: 14 L. R. A. 755: 27 Am. St. Rep. 106),
the act is held to provide for the organization of *quasi*
municipal corporations. The original act adopted in
Oregon makes no provision as to who may be electors
in such districts; but Section 6168, L. O. L., by the
amendment of 1911, provides that "any person, male or
female, of the age of 21 years or over, whether a resi-
dent of the district or not, who is a *bona fide* owner of
land situated in the district, shall be entitled to vote at
any election held under the provisions of this act." Recog-
nizing the organizations provided for as *quasi* municipal,
yet they differ widely from any other *quasi* municipality
in the powers conferred and the objects to be accom-
plished. Elements not before involved in such organiza-
tions are presented for consideration.

5. A municipal corporation such as a city has a two-
fold character; one function being governmental, in
which it is the agent of the State, the other proprietary,
or private, for the purpose of providing local necessities
and conveniences for the community. It is not necessary
here to enter into a discussion of the nature and extent
of these two functions of municipal authority and power.
They are fully disclosed in the text-books. Dillon,
Municipal Corporations, Section 38 *et seq.*; 20 Am. &
Eng. Enc. Law (2 ed.) 1130.

6. *Quasi* municipal corporations, such as road dis-
tricts and school districts, are governmental, and exer-
cise their powers as auxiliaries of the State; and in that
sense are public. Such a corporation is without legis-
lative power, but all persons within the district or cor-
porate boundaries are subject to its authority and bur-
dened or benefited by its act, and are entitled to a voice
in the selection of the officers by whom they are to be
governed.

7. On the contrary, in the irrigation districts provided for here only the land is benefited or burdened, and only the land owner has any interest in the choice of its officers, or is in any way concerned in their acts. The management of the district affairs is solely of the irrigation project in the private interest of the land owners, and therefore the apparent reason for and purpose of the requirements of Section 2, Article II, as applicable to elections in municipal or *quasi* municipal corporations, fails in the case of the irrigation district. Although Dillon, Municipal Corporations, does not expressly consider the question that arises here, he recognizes such a distinction in Sections 17, 18, 69, as appears from the language used. He says that to civil territorial divisions erected into corporations, full or *quasi,* with defined powers of local administration, the right to vote for officers is extended to all who are to be affected by their action; and in Section 69 he says that the right to make improvements or create debts is made to depend upon the vote of the people interested—self-regulation by the people concerned. The purpose of this law is similar to the provision for local improvement in a city, such as street paving, where the owners of the land affected only are consulted. Although the decisions in *Re Madera Irrigation District,* 92 Cal. 296 (28 Pac. 272, 675: 14 L. R. A. 755: 27 Am. St. Rep. 106), and in *Pioneer Irrigation District* v. *Walker,* 20 Idaho, 605 (119 Pac. 304), hold to the contrary, we cannot adopt the conclusion stated therein. We believe we are not running counter to Section 2, Article 2 of the Constitution in this conclusion, and a contrary holding would work a great wrong upon the farmers, who may obtain considerable benefit under such an organization, and who, on the other hand, might be burdened by debt beyond the benefits conferred; and its affairs should be left exclusively to those affected thereby.

What the term, "all elections," as used in Section 2, Article II, means, is not disclosed, other than as gathered from the constitution as a whole. There are many elections provided for by law that clearly are not contemplated by this provision, such as in the case of cemetery associations, charitable and public service corporations. Probably we might safely say that the framers of the constitution intended thereby the election of all officers provided for in that instrument, as specified in Section 4, Article V, Sections 1, 6, 7, Article VI, and other provisions. This is the view taken by the Supreme Court of Kansas as to Section 1, Article V, of the Kansas Constitution, which uses the term, "any election." *Wheeler* v. *Brady,* 15 Kan. 26. And a like interpretation is given Section 1, Article VII, of the Illinois Constitution, containing similar words. *People* v. *English,* 139 Ill. 622 (29 N. E. 678: 15 L. R. A. 131) ; *Plummer* v. *Yost,* 144 Ill. 68 (33 N. E. 191: 19 L. R. A. 110). The Supreme Court of Florida holds to the same effect. *State ex rel.* v. *Dillon,* 32 Fla. 545 (14 South. 383: 22 L. R. A. 124). And this court has given practically the same construction to our constitution in *Harris* v. *Burr,* 32 Or. 348, 367 (52 Pac. 17, 20: 39 L. R. A. 768), providing: "The elective franchise conferred by Section 2, Article II, does not, nor was it intended to, fix and define the qualification of voters at school meetings, but was designed only to govern in all general and special elections not otherwise provided for by the constitution, and applies to the election of all officers known to the constitution, as well as to such as may be provided for thereunder," following the Illinois and Kansas cases above cited. However, we prefer to rest the decision upon the ground that the elections contemplated in Section 2, Article II, are only those relating to officers by whose action all of the people within the district are to be affected. Others than land owners have no possible interest in the irrigation district;

as such, or in its financial management, nor right to a voice in the naming of its officers; and a non-resident land owner has exactly the same interest and responsibility as a resident, and is entitled to the same voice in the direction of its affairs. Districts within this statute can be distinguished from private corporations only by the fact that their organization is compulsory upon those not petitioning for it, and that the expense of maintenance is incurred and a large debt created, which are made liens on the land without the consent of the owner, payment of which must be made by compulsory assessment. No other elements of government or municipal proprietorship are involved. Upon this view of the law we hold that the amendment of Section 6168, L. O. L., by which the qualifications of voters are provided, is not in conflict with Article II, Section 2, of the constitution, and that the elections involved here were regular and valid.

By the amendment of Section 6168, L. O. L. (Sess. Laws 1911, p. 380), it is provided:

"On the final hearing the court shall make and enter an order determining whether the requisite number of owners of the land within such proposed district shall have petitioned for the formation thereof and whether the petition, and notice of the time of presentation thereof, shall have been duly published as hereinbefore provided, and said order as so made and entered shall be conclusive evidence of the facts found by the court."

The order of the county court is full and complete as to the facts, namely, that the requisite number of owners of the land within the district have petitioned for the formation thereof, and that the petition and notice of the time of presentation thereof were duly published, as provided by law; and we find that the proceedings of the said board and of the district, providing for and authorizing the issue and sale of the bonds of the district, were regular and legal, and that each and all of the proceedings for the organization of said district, from and

including the petition for the organization of the district, and all proceedings affecting the legality and validity of said bonds, and the order for the sale, and the sale thereof, are legal and valid.

The decree of the circuit court is affirmed.

AFFIRMED.

---

Decided January 14, 1913.

ON REHEARING.

(129 Pac. 123.)

MR. JUSTICE EAKIN delivered the opinion of the court.

By the motion for rehearing attention is called to the amendment of Section 6168, L. O. L. (Sess. Laws 1911, p. 380), which provides:

"On the final hearing the court shall make and enter an order determining whether the requisite number of owners of the land within such proposed district shall have petitioned for the formation thereof and whether the petition, and notice of the time of presentation thereof, shall have been duly published as hereinbefore provided, and said order as so made and entered shall be conclusive evidence of the facts found by the court."

The order of the county court in this case is full and complete upon these matters; and we were in error in holding that the order of the county court is not evidence of the facts, and that proof thereof must be produced at the hearing in the circuit court. The amendment above mentioned makes the order of the county court at least *prima facie* sufficient in the circuit court to establish the facts mentioned; and therefore the proof was sufficient to sustain the decree of the circuit court.

The former opinion is hereby modified upon these points, and the decree of the circuit court is affirmed.

MODIFIED ON REHEARING AND AFFIRMED.