Argued October 26, 1971, affirmed in part; reversed and remanded in part January 14, petition for rehearing denied March 7, petition for review denied June 20, 1972

RIVER ROAD WATER DISTRICT, *Appellant, v.* CITY OF EUGENE ET AL (No. 100704), *Respondents.*

SANTA CLARA WATER DISTRICT, *Appellant, v.* CITY OF EUGENE ET AL (No. 100705), *Respondents.*

RIVER ROAD PARK AND RECREATION DISTRICT, *Appellant, v.* CITY OF EUGENE ET AL (No. 100706), *Respondents.*

492 P2d 812

*Richard Smurthwaite,* Eugene, argued the cause for appellants. With him on the briefs were Husband, Johnson & Frye, Eugene.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

SCHWAB, C. J.

The plaintiffs in these consolidated appeals are two water districts and a park and recreation district.

The city of Eugene, acting under the Local Government Boundary Commissions law, ORS 199.140 et seq, annexed certain territories lying within the boundaries of each of the plaintiffs. It also withdrew from the two water districts the water district territories which it had annexed.

After these actions on the part of the city, each of the three districts held a "remonstrance election" in which a majority voted against the city's actions. The Lane County Local Government Boundary Commission, which under the relevant statutes is charged with entering final orders in matters of annexation and withdrawal of the types with which we are here concerned, treated the district elections as being of no effect. Thereupon the plaintiff districts each initiated declaratory judgment proceedings against the city and the boundary commission in which plaintiffs contended:

(1) Under the Local Government Boundary Commissions law the results of the "remonstrance elections" required that the Lane County Local Government Boundary Commission withdraw its order approving the annexation and withdrawal of territories by the city of Eugene;

(2) That the actions of the city of Eugene were void because the city did not strictly comply with the provisions of the Local Government Boundary Commissions law;

(3) That under the provisions of ORS 266.030, regardless of the provisions of the Local Government Boundary Commissions law, the boundaries of the park and recreation district could not be reduced without the approval of a majority of the voters of the district; and

(4) That the Local Government Boundary Commissions law is unconstitutional.

The trial court sustained demurrers to the complaints of the three districts on the grounds that the complaints did not state facts sufficient to constitute causes of suit.

The petition which the city of Eugene filed with the Lane County Local Government Boundary Commission sought (1) to annex territory of each of the three plaintiff districts, and, separately (2) to withdraw from the water districts the annexed water district territories. The city did not formally initiate any proceedings for withdrawal of the annexed park and recreation district property, because it assumed that as to a park and recreation district, withdrawal automatically followed annexation.

For the purposes of this opinion, "annexation" means the incorporation of land within the boundaries of a city or district.

"Withdrawal" of land from a special service district means that the withdrawn territory is no longer subject to the district for the purposes of receiving services from the district or for being included within the tax base of the district so far as future assessments are concerned.

The "remonstrance election" within each of the three districts challenged only that portion of the final order of the Lane County Local Government Boundary Commission which allowed the withdrawal of territory.[1]

---

[1] Each district submitted the following question to its voters:

"Shall that portion, which is presently within the boundaries of the * * * District, of the hereinafter described territory designated as 'Exhibit A' and attached to this ballot and made a part hereof be withdrawn from the boundaries of the * * * District"?

A district can hold a "remonstrance election" in the manner provided by ORS 199.505 only if it is an "affected district." The main question to be resolved on these appeals as to each of these plaintiffs is whether it is an "affected district."

"Affected district" is defined in the Local Government Boundary Commissions law as follows:

"'Affected district' means a district for which a boundary change is proposed or ordered." ORS 199.415(2).

■ This statute can be properly interpreted only by considering the entire legislative scheme. A part of that scheme, ORS 199.510(1), provides:

"* * * If the affected territory is to be annexed to a city, and lies within the boundaries of a district other than * * * [a domestic water supply corporation or a sanitary district], the affected territory is withdrawn from the district on the date of the final order unless the city is part of the district."

By virtue of ORS 199.510(1) the annexation of the territories of the water districts in and of itself did not affect the boundaries of the water districts because annexation did nothing to limit the rights and duties of each water district with regard to the land which comprised it prior to annexation. The result of the annexation of water district territories was to superimpose another local governmental body over the same land without changing the powers of the pre-existing districts. When annexation alone is involved, a district as such has no power to object.[2]

On the other hand, because the park and recrea-

---

[2] The qualified voters in the territory actually annexed have the right to object to a minor boundary change. ORS 199.505.

tion district was not one of those districts exempted by ORS 199.510(1) from automatic loss of territory by annexation, the actions of the city of Eugene and the Lane County Local Government Boundary Commission, if valid, automatically resulted in a change of the district's boundaries by withdrawing from the district a portion of its territory.

We look to the legislative history of the Local Government Boundary Commissions law and to the legislative scheme which existed at the time that statute was enacted to determine if the legislature intended to limit the power of certain special service districts to prevent withdrawal of territory from their boundaries.[9]

The purpose of the Local Government Boundary Commissions law is set forth in ORS 199.410(2):

"The purpose of ORS 199.410 to 199.540 is to provide a method for guiding the creation and

---

[9] The following types of special service districts are subject to the Local Government Boundary Commissions law:

"(1) Domestic water supply corporation organized under ORS chapter 264.

"(2) Park and recreation district organized under ORS chapter 266.

"(3) Highway lighting district organized under ORS chapter 372.

"(4) Sanitary district organized under ORS 450.005 to 450.245.

"(5) Sanitary authority organized under ORS 450.705 to 450.980.

"(6) County service district organized under ORS chapter 451.

"(7) Vector control district organized under ORS 452.020 to 452.180.

"(8) Rural fire protection district organized under ORS chapter 478." ORS 199.420.

Under ORS 199.510(1), only water and sanitary districts are exempt from the provision that withdrawal of territory follows automatically after annexation of territory.

growth of cities and special service districts in Oregon in order to prevent illogical extensions of local government boundaries and to assure adequate quality and quantity of public services and the financial integrity of each unit of local government."

The Local Government Boundary Commissions law, ORS ch 199, was passed by the 1969 session of the legislature. It represented a new approach to the problem of metropolitan areas in Oregon by creating a superior body to oversee, approve and initiate local government boundary changes.[④]

ORS ch 199 defines two types of boundary changes: "major" (ORS 199.415(11)), and "minor." We are concerned here with a petition for minor boundary changes.

" 'Minor boundary change' means an annexation or withdrawal of territory to or from a city or district." ORS 199.415(12).

In order to facilitate minor boundary changes, the legislature provided that a minor boundary change would take effect upon the final order of the boundary commission unless those "affected" by the change called an election.

██ The park and recreation district urges us to define the term "affected district," ORS 199.415(2), so broadly that a park and recreation district would be able to challenge an annexation of territory to a city because annexation to a city and withdrawal of territory from a park and recreation district involves only one petition. As remains the case under present law,

---

[④] Hearings on HB 1027 before the House Committee on Local Government, February 28, 1969. See also, Minutes of the Senate Committee on Local Government, May 13 and 15, 1969.

prior to the passage of the Local Government Boundary Commissions law, a special service district had no power to object to a city's annexation of land that lay within the district's boundaries. *See,* ORS 222.111, 222.170, 222.520, and 222.850 to 222.915.

In reaching a decision as to the power of park and recreation districts under the Local Government Boundary Commissions law, it is necessary to ask whether the legislature intended to give these districts additional power to preserve their separate identity on their own motion or to subordinate them to some degree because of the necessity of providing a mechanism for orderly delivery of necessary public services in metropolitan areas.

If we should construe "affected district" as plaintiffs would have us do—i.e., give districts which have very limited functions, such as park and recreation districts, highway lighting districts, vector control districts, etc., power to veto annexation to a city —we would be interpreting the 1969 law as giving such districts more power to block the reach of city government than such districts had before the Local Government Boundary Commissions law was passed. We conclude that the legislature did not intend to give such districts the power to block annexation of land to a city after the annexation has been approved by a boundary commission.

It follows that the city of Eugene was correct when it interpreted the "automatic withdrawal" provision of ORS 199.510(1) as not requiring a second petition seeking to withdraw from a park and recreation district. A district is not an "affected district" when land lying within its boundaries is annexed to a

city or to another district not of the same type.⑤ It is an "affected district" within the meaning of ORS ch 199 only when a separate petition for withdrawal addressed to and approved by the local government boundary commission is necessary in order to withdraw land. If the withdrawal of territory results automatically as a consequence of an approved annexation, the question of changing the boundaries of the district never becomes the subject of a petition before the boundary commission as provided by ORS ch 199.

The election held by the park and recreation district had no effect on the final order of the Lane County Local Government Boundary Commission.

■ With regard to the water districts the statutory scheme leads us to a different conclusion. Domestic water supply corporations are specifically excluded from the "automatic withdrawal" provisions of ORS 199.510(1).⑥ Therefore, the city of Eugene was required to file separate petitions and obtain approval to withdraw territory from the water districts. Such petition is a proposal for a boundary change and a district for which a boundary change is proposed under ORS ch 199 is an "affected district." ORS 199.415(2). As such, the water districts had the power to call a district-wide "remonstrance election" under

---

⑤ The boundary commission cannot approve a petition in a situation where a special service district seeks to annex territory that lies within another special service district of the same type. ORS 199.515(2).

⑥ The legislature apparently felt that withdrawal of territory from water and sanitary districts may require a division of assets and financial adjustments not present in the other types of districts within the jurisdiction of the boundary commissions. We note that special provisions in regard to water and sanitary districts existed prior to passage of the Local Government Boundary Commissions law and still pertain in areas outside the jurisdiction of the boundary commissions. ORS 222.540 and ORS 222.560.

the provisions of ORS 199.505. The order of the circuit court sustaining the demurrers to the complaints of River Road Water District and Santa Clara Water District was in error.[⊘]

It remains, however, to consider further allegations by River Road Park and Recreation District to irregularities in the procedure followed by the city of Eugene and constitutional objections to the Local Government Boundary Commissions law.

■ River Road Park and Recreation District argues that the failure of the city of Eugene to designate an "applicable principal Act" invalidated the city's petition for failure to comply with the requirements of ORS 199.490(2). That statute provides:

> "The petition [for annexation] or resolution shall:
> "* * * * *
> "(c) If the proposal concerns a district, designate the applicable principal Act; and
> "* * * * *."

The term "principal Act" is defined in ORS 199.415(14):

> " 'Principal Act' means the law, other than ORS 199.410 to 199.540 [the Local Government Boundary Commissions law], applicable to boundary changes of an affected city or district."

---

[⊘] The 1971 amendments (Oregon Laws 1971, ch 462, Section 19, p 731) provide:

"All boundary changes initiated and purported to be effected in accordance with ORS 199.410 to 199.540 prior to the effective date of this Act are hereby ratified and declared to be valid notwithstanding any procedural error in the effectuation of the changes."

This provision has no effect on the result here. The right of water districts to hold "remonstrance elections" is a substantive right under the statute and the failure to give effect to such a right is more than a procedural irregularity.

ORS 199.540[8] expressly provides that the only statutes which shall apply to minor boundary changes are those forming the Local Government Boundary Commissions law. Therefore, the definition given in ORS 199.415(14) both defines the term "principal Act" and deprives it of any meaning as it is used in ORS 199.490(2)(c).[9] It was not necessary for the city of Eugene to "designate the applicable principal Act."

■ River Road Park and Recreation District also argues that ORS 266.030 prevents a city from reducing the boundaries of a park and recreation district without approval of the voters of the district.

ORS 266.030 (*repealed* Oregon Laws 1971, ch 727, p 1694), provided:

"Notwithstanding the provisions of ORS 222.510 to 222.580, a city may not reduce the boundaries

---

[8] "ORS 222.111 to 222.160 and 222.990 and the statutes of the state that govern annexation of territory to, or disconnection of territory from, districts shall not apply in territory subject to the jurisdiction of a boundary commission * * *." ORS 199.540.

[9] The legislative history points up the fact that there has been some confusion about this particular provision. It was the only part of ORS 199.490 which was changed in the bill as originally drawn. The draft presented to the House Committee on Local Government read, "If the proposal concerns a district, designate the principal Act of the proposed district * * *."

The Engrossed Bill was changed to, "If the proposal concerns a district, designate the applicable principal Act * * *."

As first written, the statute did not belong in a section involving minor boundary changes, but applied to a major boundary change—a proposal for creation of a district.

Even after the change the language has no meaning without creating a definition that goes outside the statute. If we were to interpret the term to mean the whole law under which the district was formed, we would be ignoring a set of definitions which were meticulously drawn to govern this Act.

A "principal Act" is applicable in major boundary change situations for reasons which we need not here discuss.

of a [park and recreation] district or extinguish or reduce its boundaries by any act of such city without the approval of a majority of the registered voters of the district voting for such extinguishment or reduction at a duly called election."

ORS 266.030 was passed by the 1969 legislature (Oregon Laws 1969, ch 668, Section 2, p 1709), was signed by the Governor and filed on June 19, 1969. It took effect 90 days after the end of the legislative session (Oregon Constitution, Art IV, § 28).

The boundary commission statute (Oregon Laws 1969, ch 494, p 889) had an emergency clause and became effective July 1, 1969.

Plaintiff argues that since ORS 266.030 became effective later, it is a more recent expression of legislative intent and should take precedence over the boundary statutes.

This argument is not correct. Both statutes can be given effect without reaching a conflict between them.

"It is, of course, a cardinal rule of statutory construction that when it is contended that two statutes are in conflict the statutes must, whenever possible, be construed together and in such a manner as to be consistent, rather than in conflict, thus giving effect to both statutes." *McLain v. Lafferty,* 257 Or 553, 480 P2d 430, 432 (1971).

ORS 266.030 was a limitation upon the powers of cities to proceed under the general annexation laws, ORS ch 222. It was not a limitation of cities within the jurisdiction of a local government boundary commission and therefore proceeding under ORS ch 199. *See,* ORS 199.540.

The constitutional objections challenge the valid-

ity of the Local Government Boundary Commissions law under Oregon Constitution, Art XI, § 2, on the grounds that (1) a local government boundary commission has the power to amend a city charter without a vote of the legal voters of the city, and (2) the Local Government Boundary Commissions law establishes a corporation by special law.

The same constitutional provision is involved in both contentions. Oregon Constitution, Art XI, § 2, provides:

> "Corporations may be formed under general laws, but shall not be created by the Legislative Assembly by special laws. The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon * * *."

■ The plaintiffs' first contention has no merit. There is nothing in the record to show that the actions of the Eugene city council were not within the powers legally granted it. The plaintiffs are seeking to attack the constitutionality of the Local Government Boundary Commissions law by invoking the rights of third parties upon a hypothetical set of facts. Plaintiffs have no standing to raise this issue. *State v. Layne,* 244 Or 510, 511, 419 P2d 35 (1966); *Cummings Constr. v. School Dist. No. 9,* 242 Or 106, 113, 408 P2d 80 (1965).

■■ As to plaintiffs' other contention that the creation of the Local Government Boundary Commission was the creation of a corporation by special law, the answer is that a boundary commission is not a corporation.

The various entities which Oregon has recognized as quasi-municipal corporations have attributes far different and power far greater than a boundary commission: school districts (*Board of Directors v. Peterson,* 64 Or 46, 52, 128 P 837, 129 P 123 (1913)); road districts (*Board of Directors v. Peterson,* supra); irrigation districts (*Central Pacific Co. v. Ager,* 144 Or 527, 533, 25 P2d 927 (1933)); and transportation districts (*Horner's Market v. Tri-County Trans.,* 2 Or App 288, 467 P2d 671, 677, Sup Ct *review denied,* 90 Adv Sh 1681, 256 Or 124, 471 P2d 798 (1970)).

Each of the kinds of corporations noted above is engaged in providing services to people and has been given corporate powers by the legislature, including the powers to sue and be sued; to buy, hold and dispose of property; to enter contracts; to make necessary rules and regulations; and to tax.

Another guideline for determining whether a corporation has been created is the intent of the legislature. 1 Fletcher, Cyclopedia Corporations § 64 (rev ed 1963); 1 McQuillin, Municipal Corporations § 2.03, § 2.13 (3d ed rev 1971).

School districts (ORS 332.072),[10] utility districts (ORS 261.215),[11] and mass transit districts (ORS

---

[10]
"All school districts are bodies corporate, and the district school board is authorized to transact all business coming within the jurisdiction of the district and to sue and be sued. Pursuant to law, district school boards have control of the district schools and are responsible for educating children residing in the district." ORS 332.072.

[11]
"* * * The inhabitants thereof shall be a corporation by the name and style of the utility district specified in the proclamation, and as such shall have perpetual succession, and

267.200),[12] have been designated by the legislature as corporations. Although an irrigation district has not been declared a corporation, it is given broad powers. ORS 545.070, 545.090, 545.108.

by such name shall exercise and carry out the corporate powers and objects conferred and declared by this chapter." ORS 261.215.

[12]

"A district shall constitute a municipal corporation of this state, and a public body, corporate and politic, exercising public power. It shall be considered a unit of local government for the purposes of ORS 190.003 to 190.110, a public employer for the purposes of ORS 236.610 to 236.650, and a political subdivision for the purposes of ORS 305.620. It shall be entitled to tax refunds as allowed under ORS 319.350 and 319.831 to incorporated cities. It shall have full power to carry out the objects of its formation and to that end may:

"(1) Have and use a seal, have perpetual succession, and sue and be sued in its own name.

"(2) Acquire by condemnation, purchase, lease, devise, gift or voluntary grant real and personal property or any interest therein, located inside the boundaries of the district and take, hold, possess and dispose of real and personal property purchased or leased from, or donated by, the United States, or any state, territory, county, city or other public body, nonprofit corporation or person for the purpose of providing or operating a mass transit system in the district and aiding in the objects of the district.

"(3) Contract with the United States or with any county, city, state, or public body, or any of their departments or agencies, or a nonprofit corporation, for the construction, acquisition, purchase, lease, preservation, improvement, operation or maintenance of any mass transit system.

"(4) Build, construct, purchase, lease, improve, operate and maintain, subject to other applicable provisions of law, all improvements, facilities or equipment necessary or desirable for the mass transit system of the district.

"(5) Enter into contracts and employ agents, engineers, attorneys and other persons and fix their compensation.

"(6) Fix and collect charges for the use of the transit system and other district facilities.

"(7) Construct, acquire, maintain and operate passenger terminal facilities and motor vehicle parking facilities in connection with the mass transit system within the district.

"(8) Do such other acts or things as may be necessary or convenient for the proper exercise of the powers granted to a district by this chapter." ORS 267.200.

The boundary commission does not have any corporate powers listed above except the power to make rules and regulations, including setting the salaries of its employes, ORS 199.530(2)[13] and to accept and hold real property.[14] A grant of such powers is not inconsistent with those of an administrative agency. *See,* e.g., ORS 496.155, 496.160, 496.330, State Game Commission; ORS 516.090, 516.130(2), Department of Geology and Mineral Industries.

Affirmed as to River Road Park and Recreation District; reversed and remanded as to River Road Water District and Santa Clara Water District.

---

[13]
"(1) Each member of a boundary commission shall receive travel and other expenses incidental to the performance of his duties.

"(2) A commission may employ administrative, clerical and technical assistants for carrying on its functions and it may fix their compensation." ORS 199.530.

[14]
"A boundary commission may accept any funds, property or services, or the use of any property donated by any person, district, city or county in carrying out the purposes of ORS 199.410 to 199.540." ORS 199.535(2).