Argued November 1, reversed and remanded December 23, 1976, petition
for rehearing denied January 25, 1977

OREGON MEDICAL ASSOCIATION, *Appellant,*

*v.*

RAWLS, *Defendant,*

and

KAISER FOUNDATION HOSPITALS et al,
*Intervenor-Respondents and Cross-Appellants,*

and

SOBEL et al, *Intervenor-Respondents and
Cross-Appellants.*

(No. 421-496, SC 24596)

HAGMEIER, *Appellant,*

*v.*

RAWLS, *Defendant,*

and

KAISER FOUNDATION HOSPITALS et al,
*Intervenor-Respondents and Cross-Appellants,*

and

SOBEL et al, *Intervenor-Respondents and
Cross-Appellants.*

(No. 422-942, SC 24597)

557 P2d 664

*Charles D. Ruttan* of Morrison, Dunn, Cohen, Miller & Carney, Portland, argued the cause and filed a brief for appellants Oregon Medical Association and C. H. Hagmeier, M.D.

*William L. Hallmark* of Jones, Lang, Klein, Wolf & Smith, Portland, argued the cause and filed a brief for intervenor respondents and cross-appellants Kaiser Foundation Hospitals, and The Permanente Clinic, and *Ronald B. Lansing,* Portland, argued the cause and filed a brief for intervenor-respondents and cross-appellants Sobel, Scott, Coon, Degner and Ward.

*R. Ladd Longquist* and *Burl Green,* Portland, filed a brief amicus curiae for Oregon Trial Lawyers Association.

Before Denecke, Chief Justice, and McAllister, O'Connell, Holman, Howell, Bryson and Bohannon, Justices.

O'CONNELL, J.

**O'CONNELL, J.**

This is a declaratory judgment proceeding which originated in a complaint filed by the Oregon Medical Association and C. H. Hagmeier, a physician, against Lester Rawls, Insurance Commissioner for the State of Oregon, seeking a decree declaring constitutional ORS chapter 752.

ORS ch 752 was enacted by the 1975 Legislature in order to assure that "physicians in this state be insured for professional liability and that the insurance be available at reasonable rates." It requires participating physicians to purchase professional liability insurance in varying amounts, depending upon the type of practice of the doctor. Participating physicians, depending upon their risk classifications, also contribute to a Medical Excess Liability Fund which is maintained by the state. In exchange for this participation, the physicians are liable for professional negligence only for the amount covered by insurance. The Act is drafted upon the assumption that any additional amounts owed to a medical malpractice claimant will be recovered from the Excess Liability Fund. The Act also limits recovery by indemnitors of the physician to the amount covered by insurance. ORS 752.050 (2) provides, however, that,

> "No person other than a claimant, or in the event of the death of a claimant, his personal representative, shall have any claim for compensation, indemnity, or contribution from the Medical Excess Liability Fund."

Kaiser Foundation Hospitals and The Permanente Clinic, a partnership comprised of 141 physicians, intervened seeking a declaration that ORS Chapter 752 sets limits on intervenors' vicarious liability or, if not so construed, then a declaration that the indemnity and contribution provisions of ORS 752.050 (1) (2) are unconstitutional.

Allan Daniel Sobel, Charles Brian Scott, James Starner Coon, David Degner, and Lee Ann Ward, as interested citizens, intervened praying for a declara-

tion that ORS Chapter 752 is unconstitutional for various reasons.

Defendant Lester Rawls demurred to plaintiffs' complaints and to both complaints in intervention.

Plaintiffs filed motions for summary judgment seeking a declaration that ORS Chapter 752 provides that any Oregon physician who complies with the Act is personally immune from liability in excess of his professional liability coverage and that ORS Chapter 752 was constitutional in all particulars. Kaiser filed a cross-motion for summary judgment.

The several suits were consolidated for trial. All parties stipulated that the court could proceed to consider the questions raised in the motions for summary judgment and demurrers filed in the cases as though all parties had filed motions for summary judgment in support of their position; all parties further agreed that if the court found a justiciable controversy, the court could then proceed to consider and decide the cases on their merits, based upon the affidavits and exhibits filed in support of the several motions for summary judgment in each of the cases.

The trial judge rendered a written opinion and a written supplemental opinion, followed by findings of fact and and conclusions of law, and entered judgment. The trial court concluded that there was not a justiciable controversy between plaintiffs and defendant Rawls, that there was a justiciable controversy "between Rawls, the plaintiffs OMA and Hagmeier and the Intervenors Kaiser, Permanente and the Citizens," and that the controversy was ripe for judicial determination. The decree found ORS Chapter 752 constitutional except insofar as it precluded common law indemnity rights, and further found that complying physicians are personally immune from claims by patients for damages for acts of professional negligence but not personally immune from claims for indemnity in excess of their professional liability coverage.

This appeal is filed to test the trial court's action in finding that the indemnity provisions of ORS Chapter 752 are unconstitutional and in further finding that a physician is not personally immune from claims for indemnity in excess of his professional liability insurance coverage.

Kaiser has cross-appealed from the trial court's ruling that ORS Chapter 752 did not eliminate vicarious liability and that the provision barring contribution claims is constitutional. Citizens have cross-appealed from the trial court's ruling that ORS Chapter 752 is constitutional except insofar as it abolishes common law indemnity claims.

The trial court correctly held that there was not a justiciable controversy between plaintiffs and defendant Rawls. A justiciable controversy does not exist unless the interests of the parties to the action are adverse.[1] Certainly, this was absent in the suit between Oregon Medical Association and Rawls and in the suit between C. H. Hagmeier and Rawls because in each of these cases both plaintiff and defendant were interested in establishing the constitutionality of ORS Chapter 752.

However, by the intervention of the "Citizens" and Kaiser and Permanente, the constitutionality of ORS Chapter 752 is attacked and therefore the element of adverseness essential to justiciability is supplied. It is argued, however, that none of the intervenors have standing to raise the issue.

The concept of standing has been described as being "among the most amorphous in the entire domain of public law,"[2] and that its treatment by the courts has been "cluttered, confused and contradictory."[3] Our

[1] *Oregon Creamery Mfgs. Ass'n. v. White,* 159 Or 99, 107, 78 P2d 572 (1938).

[2] Professor Freund's testimony in Hearings on S. 2097 Before the Subcommittee on Constitutional Rights of the Senate Comm. on the Judiciary, 89th Cong. 2d Sess., pt. 2 at 498 (1966).

[3] 3 Davis, Administrative Law Treatise § 22.18 (Supp. 1965).

own treatment of the principle is not without ambiguity.[4] The scholars themselves cannot agree upon the essential ingredients of the concept or to which class of cases it is to be applied.[5]

■ Fortunately it is not necessary to decide the question of standing in this case because we can dispose of the case on other grounds. Even assuming there is standing, there is the threshhold question of whether we should undertake to pass upon the constitutionality of ORS Chapter 752 now or await the day when a patient attacks the statute because he is not completely compensated for his injury as a result of the application of the limitation of liability provision of the statute. Whether we should entertain the suit now or postpone the decision on the constitutionality of the statute depends primarily upon whether we think that the latter course is required to most efficiently ration scarce judicial resources.[6]

■ There are reasons other than those underlying the principle of standing for a court to decline to adjudicate a question presented to it for decision.[7] Among those reasons are the inadequacy of the delineation of the issues and the insufficiency of the factual data necessary for the resolution of the question presented for adjudication. On numerous occasions courts have refused to entertain suits which lack this specificity. Thus, the United States Supreme Court, adhering to

---

[4] *Compare Gortmaker v. Seaton,* 252 Or 440, 450 P2d 547 (1969) with *Dickman v. School Dist. 62C,* 232 Or 238, 366 P2d 533 (1961). See also, *Cornelius v. City of Ashland,* 12 Or App 181, 506 P2d 182 (1972).

[5] E.g., compare 3 Davis, Administrative Law Treatise §§ 22.01 et seq. (Supp. 1965) and Jaffee, *Standing Again,* 75 Harv L Rev 633 (1971) and Scott, *Standing in the Supreme Court - A Functional Analysis,* 86 Harv L Rev 645 (1973) and Bickel, *The Supreme Court 1960 Term, Forward: The Passive Virtues,* 75 Harv L Rev 40 (1961), et al.

[6] Scott, *Standing in the Supreme Court - A Functional Analysis,* 86 Harv L Rev 645 (1973).

[7] 3 Davis, Administrative Law Treatise § 22.00-4, p. 723 (Supp. 1970). *Cf.,* Employers Mut. Liability v. Bluhm, 227 Or 415, 418, 362 P2d 755 (1961): "Whatever may be the permissive scope of ORS 28.010 through 28.160, the mere fact that a court might have jurisdiction to hear a justiciable controversy does not mean that it should exercise its jurisdiction when to do so is manifestly unwise and unnecessary."

the policy of "avoiding constitutional decisions until the issues are presented with clarity, precision and certainty" has declined jurisdiction because of "prematurity and comparative abstractness," or "uncertainness" which left the Court without an adequate basis for decision. *Rescue Army v. Municipal Court,* 331 US 549 at 574-576, 67 S Ct 1409, 91 L Ed2d 1666 (1947). The Supreme Court has been especially reluctant to pass upon a constitutional question when the facts necessary to decide the case have not been developed through evidence, as distinct from mere allegations in the pleadings or data consisting of opinion, conclusions and interest oriented statements none of which is subjected to the rules of evidence or cross-examination. Thus on one occasion, the court observed that "only an adjudication on the merits can provide the concrete factual setting that sharpens the deliberative process especially demanded for constitutional decision"[8], and that "[m]atter now buried under abstract constitutional issues may, by the elucidation of a trial, be brought to the surface, and in the outcome constitutional questions may disappear."[9]

■ Similar concerns beset us in the present case. On the score of prematurity, there are insufficient facts in the record which point to the immediacy of injury which we have held to be required in order to obtain a declaratory judgment.[10] We do not have any eviden-

---

[8] *United States v. International Union,* 352 US 567, 591-92, 77 S Ct 529, 1 L Ed2d 563, 578 (1957).

[9] *Ibid.*

[10] Thus we held in *Oregon Creamery Mfgs. Ass'n. v. White,* 159 Or 99, 109, 78 P2d 572 (1938) that: "Deciding hypothetical cases is not a judicial function. Neither can the courts, in the absence of constitutional authority, render advisory opinions. A declaratory judgment has the force and effect of an adjudication. Hence, to invoke this extraordinary statutory relief there must be an actual controversy existing between adverse parties. Particularly should this be so when a court is asked to declare that a co-ordinate branch of the government has exceeded its power by passing a statute in violation of the fundamental or basic law. No court should declare an act unconstitutional unless it is necessary to do so." *See also, Amer. Fed. of Labor v. Bain,* 165 Or 183, 215, 106 P2d 544, 130 ALR 1278 (1940); *Windle, Adm'x. v. Flinn,* 196 Or 654, 669, 251 P2d 136 (1952);

tiary data from which we can predict whether the amount of the verdicts in medical malpractice cases brought against doctors will exceed the available insurance coverage and the excess fund to which contribution is made. Nor can we predict whether the insurance coverage will be adequate to reimburse hospitals in indemnity actions. As we pointed out in *Drake v. City of Portland*, 172 Or 558, 599, 143 P2d 213 (1943)

> "* * * The courts have many times held that a declaration will not be pronounced in suits where the rights of the plaintiff are contingent upon the happening of some event which can not be predicted and which may never occur."[11]

An additional factor regarding prematurity is the fact that a special interim task force of the Legislative Asembly is engaged in a study of the problems of malpractice insurance for the purpose of proposing legislation on the subject at the next legislative session. That study may reveal that the present statutory scheme for dealing with the medical malpractice problem is unworkable and should be repealed or amended, in the process of which the constitutional questions may disappear. This consideration dilutes the claim of urgency which is asserted here.

But apart from this, we are of the opinion that the factual data submitted in this case do not provide us with a sound footing to decide the constitutional issues raised. If Art. I, § 10 of the Oregon Constitution is

---

*Eacret v. Holmes*, 215 Or 121, 333 P2d 741 (1958); *Ore. Newspaper Pub. v. Peterson*, 244 Or 116, 120, 415 P2r 21 (1966). This is not to say, however, that a declaratory judgment is improper prior to actual injury, but only that judgment should be reserved unless some imminent injury is possible. *See, Cornelius v. City of Ashland*, 12 Or App 181, 188, 506 P2d 182 (1972).

[11] *Accord: Methodist Book Concern v. State Tax Com'n.*, 186 Or 585, 609-10, 208 P2d 319 (1949); *Hale v. Fireman's Fund Ins. Co.*, 209 Or 99, 103-04, 302 P2d 1010 (1956); *Cummings Constr. v. School Dist. No. 9*, 242 Or 106, 110-11, 408 P2d 80 (1965); *Gortmaker v. Seaton*, 252 Or 440, 442, 450 P2d 547 (1969); *Barr v. Compensation Dept.*, 1 Or App 432, 437, 463 P2d 871 (1970); *Water Park & Rec. Dist. v. City of Eugene*, 8 Or App 290, 303, 492 P2d 812 (1972).

construed to require some compelling societal interest before a person is deprived of a remedy for injury to his person, the facts relevant to the proof of the existence of such an interest would be essential to properly decide the constitutional question. Similar facts are needed under Art. I, § 20 of the Oregon Constitution and the Equal Protection Clause of the Federal Constitution.

The Idaho Supreme Court, when faced with similar challenges to a limitation of liability provision in the Idaho malpractice statute, declined to determine the equal protection issue. The court reasoned:

"While we are as aware as any other member of the public of assertions of growing problems in the medical malpractice insurance field, the record here presents no factual basis for understanding the nature and scope of the alleged medical malpractice crisis nationally or in Idaho. It is thus impossible for this Court to assess the necessity for this legislation and whether or not the limitations on medical malpractice recovery set forth in the Act bear a fair and substantial relationship to the asserted purpose of the Act.

"Is there indeed a medical malpractice insurance crisis in Idaho? Are physicians and hospitals in Idaho being charged excessive, grossly unfair premiums for medical malpractice insurance (and if so, what is the position of the Director of the Department of Insurance of the State of Idaho in relation to duties imposed upon him, *See*, I.C. § 41-201 et. seq.), or are the monumental increases in medical malpractice insurance premiums reasonably attributable to the costs of doing business in the medical malpractice insurance field? Is medical malpractice insurance unavailable at reasonable rates in the absence of legislative enactments? Is the threat of unavailability of health care to the people of Idaho a reality or not? Has there been, as suggested, an increased rash of claims and sizable recoveries or settlements in favor of persons alleged to have suffered as the result of medical malpractice in Idaho? Finally and most importantly, if there is indeed a medical malpractice insurance crisis in Idaho, what is the effect or will be the effect of the limits of recovery and the other provisions of

[ 1109 ]

the subject Act with respect to forestalling or abating the crisis? In the absence of any factual information bearing on these questions, if indeed there are answer, no decision can be made by this Court in the area of the equal protection challenge to the Act."[12]

Some of this evidence relevant to the urgency of the malpractice crisis will be useful in determining whether there is an immediate need for a declaratory judgment.[13] Other data, equally lacking in the present record, is needed to examine the rationality of the proposed scheme in light of the statute's avowed purpose of maintaining insurance for physicians ar reasonable rates.[14]

It is not our province to decide these constitutional issues in a vacuum or to strike down the legislative scheme without concrete facts which demonstrate arbitrary classification. In the absence of such guidance, resolution of the constitutionality of ORS Chapter 752 by summary judgment based upon affidavits was improper. Further facts as to the appropriateness of declaratory relief and as to the merits are needed.

Reversed and remanded.

---

[12] *Jones v. State Board of Medicine,* —— Ida ——, 555 P2d 399, 413-14 (1976).

[13] Questions of ripeness and standing may have lesser significance where "an issue of unusual importance is presented." *Dickman v. School Dist. 62C,* 232 Or 238, 245, 366 P2d 533 (1961), *cert. den.,* 371 US 823 (1962).

[14] Constitutional issues do not require in all instances factual data. As has been observed: "It is necessary only that the constitutional question be presented in a manner sufficiently concrete for resolution of the problem. This requires adequate factual information if the Court is to avoid 'dialectics . . . [and] sterile conclusions unrelated to actualities.' Although there are, to be sure, constitutional cases where, in Frankfurter's words 'facts, and facts again, are decisive' - for example, questions of substantive due process, the reach of federal power under the Commerce Clause, and the nature of the 'compelling state interest' standard - in other cases specific factual variations have little bearing on the proper resolution of the constitutional question." Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L J 1363, 1372 (1973).

The legislative record, consisting of transcriptions of the committee hearings on the malpractice question is insufficient to supply the data which we require.