TVKO,
a subdivision of Home Box Office,
a division of Time Warner Entertainment Company, L.P.,
a Delaware limited partnership,
*Plaintiff,*

*v.*

Leron R. HOWLAND,
Superintendent of the Oregon Department of State Police;
Adolfo Akil,
Member of the Oregon State Boxing
and Wrestling Commission;
Arthur W. Crews,
Member of the Oregon State Boxing
and Wrestling Commission;
Frank J. Pedrojetti,
Member of the Oregon State Boxing
and Wrestling Commission;
F. Louis Rios, M.D.,
Member of the Oregon State Boxing
and Wrestling Commission;
and Gregory A. Smith,
Member of the Oregon State Boxing
and Wrestling Commission,
*Defendants.*

(TC 4445)

Oral argument was held September 26, 2000, in the courtroom of the Oregon Tax Court, Salem.

James E. Mountain, Jr., Harrang, Long, Gary, Rudnick, Salem, Bernard Nash and Maria Colsey Heard, Dickstein, Shapiro, Morin, & Oshinsky, Washington D.C., argued the cause for Plaintiff (taxpayer).

Elizabeth Morley Large, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision rendered May 17, 2001.

**CARL N. BYERS, Senior Judge.**

Plaintiff TVKO (TVKO) seeks a declaratory judgment that ORS 463.320,[1] which imposes a tax on telecasts of boxing matches, violates the First and Fourteenth Amendments to the United States Constitution.[2] TVKO also challenges ORS 463.035 and OAR 230-030-0350(2) on the same grounds. There is no dispute of material fact, and the matter has been submitted to the court on cross motions for summary judgment.

## FACTS

TVKO is a subdivision of Home Box Office, which is a division of Time Warner Entertainment, L.P. (TWE). TWE is a Delaware limited partnership with its principal place of business in New York City. TVKO produces and distributes television programing, primarily of sporting events. It distributes its programing to cable operators for transmission to viewers on a pay-per-view basis.

On March 13, 1999, TVKO broadcast a television program that included a heavyweight championship boxing match held in New York City. TVKO distributed the program to cable operators for transmission on a pay-per-view basis. Four thousand eight hundred four orders were received in Oregon for the program. By letter dated July 8, 1999, the Oregon Boxing and Wrestling Commission demanded that TVKO pay $14,450.46 as a gross-receipts tax on the boxing event. TVKO declined on the grounds that ORS 463.320 violates the First and Fourteenth Amendments to the United States Constitution. TVKO then brought this action.

*Statutory Scheme*

The legislature has found that:

"[T]he boxing and wrestling industry in this state should be regulated in order to protect the best interests of both contestants and the public." ORS 463.018(1).

---

[1] All references to the Oregon Revised Statutes are to 1997.

[2] The motion for summary judgment addresses only the First Amendment issues.

Chapter 463 contains the statutes regulating and taxing the boxing and wrestling industry. The relevant provisions for this case are set forth below, beginning with ORS 463.015(13)(b), which defines "promoter" to include:

"A person who holds the distribution rights to a pay-per-view telecast of a boxing or wrestling event that occurs within or outside this state and who sells the ability to receive the telecast to a person who charges an admission for the right to view the telecast in this state."

"No person shall act as a promoter of either boxing or wrestling until the person has been licensed pursuant to this chapter." ORS 463.035(1).

"Any person licensed under this chapter who holds distribution rights to a pay-per-view telecast of a boxing or wrestling event that occurs within or outside this state and who sells the ability to receive the telecast to a person who charges an admission fee for the right to view the telecast in this state shall within 72 hours after an event:

"(a)   File with the superintendent a written report on a form provided by the superintendent. The report shall include the number of orders sold to persons charging an admission fee for the right to view the telecast in this state and the total gross receipts from such sales.

"(b)   Pay a tax equal to six percent of the total gross receipts for a sale. The tax must be paid by cashier's check or money order payable to the department and attached to the report required under paragraph (a) of this subsection." ORS 463.320(4).

In summary, because taxpayer held distribution rights for a pay-per-view telecast of a boxing match, taxpayer is a "promoter" who must be licensed, and as a licensee must pay a tax on the gross receipts from sales in Oregon.

## ISSUES

1. Does the Oregon Tax Court have jurisdiction over TVKO's claims? 2. Do ORS 463.035, ORS 463.320, and OAR 230-030-0350(2) violate the First Amendment to the United States Constitution?

## ANALYSIS

*Jurisdiction*

The parties agree that the Tax Court has jurisdiction over TVKO's claim that ORS 463.320 is unconstitutional. However, Defendants assert that the court has no jurisdiction over ORS 463.035 and OAR 230-030-0350(2). Inasmuch as jurisdiction cannot be conferred by agreement of the parties, the court will examine its jurisdiction with regard to all three issues.

ORS 305.410(1) provides, in relevant part, that:

"* * * the tax court shall be the sole, exclusive and final judicial authority for the hearing and determination of *all* questions of law and fact arising under the tax laws of this state. * * *" (Emphasis added.)

That subsection also lists a number of specific state statutes, such as ORS chapter 462 relating to racing taxes, that do impose taxes but are expressly identified by the legislature as "not tax laws of this state." ORS 305.410(3) then concludes that:

"Except as permitted under section 2, amended Article VII, Oregon Constitution, this section and ORS 305.445, no person shall contest, in any action, suit or proceeding in the circuit court or any other court, any matter within the jurisdiction of the tax court."

The jurisdiction conferred by ORS 305.410 is general in scope, as opposed to specific jurisdiction granted by statutes such as ORS 305.583 and ORS 494.485. In addition to expressly excluding specific laws from the Tax Court's general grant of jurisdiction, the legislature may also do so in a less direct manner. For example, in *Multnomah County v. Talbot*, 56 Or App 235, 239-41, 641 P2d 617 (1982), the Court of Appeals held that because jurisdiction over historic-property certification is expressly located in the circuit court, the Tax Court did not have jurisdiction even though the law was of significant tax consequence. Where a statute specifically locates jurisdiction in a particular court, all issues arising under that statute will be decided by that court. *See Multnomah County v. Finance America Corp.*, 120 Or App 30, 852 P2d 262 (1993).

■    In this case, no statute expressly places jurisdiction of the gross-receipts tax in the circuit court. However, ORS 463.995(2) does provide:

"Whenever it appears that any person has violated or is threatening to violate *any of the provisions* of this chapter or of the rules adopted under this chapter, the Attorney General at the request of the Superintendent of State Police may cause a civil suit to be instituted in the circuit court for injunctive relief to restrain such person from continuing the violation." (Emphasis added.)

By providing for injunctive relief to be obtained in the circuit court, did the legislature indicate an intent that jurisdiction of *all* questions under chapter 463 should be located in the circuit court?

In construing a statute, the court first looks to the text and context of the law. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). The parties assert that although ORS 463.995(2) contemplates injunctive relief being issued by the circuit court, jurisdiction over the gross-receipts tax is nevertheless located in the Tax Court. Based on the scope and nature of ORS 463.995(2), the court agrees with the parties.

Some sections within chapter 463 are disparate in nature. For example, ORS 463.995(1) makes violation of *any* provision of chapter 463 a crime; *i.e.*, a Class A misdemeanor. Yet ORS 463.995(2) nevertheless provides only a very specific and narrow remedy, *i.e.*, injunctive relief in the circuit court. Ordinarily, injunctive relief is not granted to aid in the "enforcement of a criminal statute." *Oregon State Bar v. Wright*, 280 Or 693, 699, 573 P2d 283 (1977). Injunctions will issue to enforce a criminal statute only where the court finds it necessary to protect the public interest. *State ex rel Peterson v. Martin*, 180 Or 459, 466, 176 P2d 636 (1947). While the legislature may have felt it necessary to provide for injunctive relief to protect participants in boxing or wrestling matches, it seems unlikely the same urgency would apply to collection of the gross-receipts tax.

If the legislature had wanted to restrict jurisdiction over the tax provisions of the boxing and wrestling statutes, it could have amended ORS 305.410 to include chapter 463

among those labeled "not tax laws of this state." It did not do so. Some of the disparity in the sections may be explained by the fact that the gross-receipts tax was enacted by the legislature in a separate bill from the bill imposing the licensing requirement on professional boxing and wrestling.[3]

When legislative history does not provide clarification, the court then attempts to determine what the legislature would have done had it thought of the problem. *PGE*, 317 Or at 612; *see also State v. Gulley*, 324 Or 57, 66, 921 P2d 396 (1996). The court is also guided by the maxim to avoid an absurd result. *See State v. Vasquez-Rubio*, 323 Or 275, 282, 917 P2d 494 (1996) (referring to *PGE*, 317 Or at 612). "That maxim is best suited for helping the court to determine which of two or more plausible meanings the legislature intended." *Id.* at 282-83. Giving a literal meaning to ORS 463.995(2), so that any violation under chapter 463, including failure to pay the tax, may be addressed by injunction, seems illogical.[4]

By providing that the superintendent can request injunctive relief, the legislature focused on the regulatory provisions of ORS chapter 463. For regulatory provisions, injunctive relief is appropriate where after-the-fact criminal prosecution is inadequate. Injunctive action may prevent repeated violations in cases of unlicensed conduct, especially when the conduct may endanger public health or safety. *See, e.g., Martin*, 180 Or at 466 (relating to the distribution of milk without a license).[5]

Because a tax is not due until after an event takes place, tax authorities do not seek injunctive relief but seek collection, a remedy at law. Injunctive relief is granted to prevent future harm, not correct an accomplished fact. *See Garratt-Callahan Co. v. Yost*, 242 Or 401, 409 P2d 907

---

[3] The tax provisions were enacted as part of Oregon Laws 1987, chapter 788, sections, 2 and 23 (House Bill 3256), while the licensing provisions were enacted in Oregon Laws 1987, chapter 789, section 19 (Senate Bill 470).

[4] After considering other Oregon statutes, it is questionable whether the legislature really intended to make failure to pay the gross-receipts tax a crime.

[5] The milk marketing, production, and distribution regulations of ORS chapter 583 provide a helpful example. While ORS 583.993(1) makes criminal violations of licensing violations, ORS 583.540(1) provides for the enforcement of injunction issued for such violation. On the other hand, not paying the tax allows for an audit and eventual judgment, if necessary. *See* ORS 583.540(2).

(1966). The court also considers it important that ORS 463.995(2) provides only a limited remedy. It does not provide for jurisdiction in the circuit court of all appeals or disputes under ORS chapter 463. In summary, by providing a narrow remedy that is not appropriate for taxation, the legislature indicated an intent to leave the positively located jurisdiction in the Tax Court.

■    That the legislature intended the Tax Court to have jurisdiction over the tax provisions of ORS chapter 463 is the more plausible and reasonable conclusion. "It is appropriate to reject a proposed construction that leads to absurd results in favor of a construction that remains faithful to the language of the statute but leads to no such consequence." *J. L. Ward Co. v. Landscape Contractors Board*, 142 Or App 438, 442, 921 P2d 416 (1996). There is no doubt that, had the legislature addressed the issue, the injunctive relief provided by ORS 463.995(2) would have been tailored to exclude the tax collection provisions of ORS chapter 463.

Defendants contend that the Tax Court does not have jurisdiction over TVKO's claims under ORS 463.035 and OAR 230-030-0350(2). In opposition, TVKO contends that the licensing and notice requirements are based on the same facts and involve the same issues as the gross-receipts tax. TVKO argues that to avoid split jurisdiction, the Tax Court may decide nontax issues that will not have substantial nontax consequences.

The licensing requirement of ORS 463.035 is not just a precondition for taxation. It is a separate requirement, part of the regulatory scheme to accomplish the purposes of the chapter. Those purposes are to protect the interests of the contestants and the public, not to impose a tax. Similarly, the requirement of advance notice contained in OAR 230-030-0350(2) is not related to or a condition for tax imposed in the gross-receipts tax.

■    In *Jarvill v. City of Eugene*, 289 Or 157, 167, 613 P2d 1 (1980), the Supreme Court held that the legislature did not intend for ORS 305.410(1) to result in split jurisdiction. That is, a taxpayer should not be required to bring two separate proceedings in two separate courts to contest a single tax.

The court found that such a result would be "patently unreasonable" and absurd. *See id.* at 166-67. Therefore, the Tax Court may consider issues arising under nontax laws if necessary to avoid split jurisdiction. For example, the court may consider an issue arising under the United States Constitution to determine whether a taxpayer is taxable under Oregon tax law.[6] However, the Oregon Supreme Court has expressly stated:

> "* * * On the other hand, a precondition to taxation does not arise under the tax laws if jurisdiction to decide that precondition has been affirmatively located in another court or if a decision on the precondition has substantial non-tax consequences." *Sanok v. Grimes*, 294 Or 684, 697, 662 P2d 693 (1983), *aff'd* 306 Or 259 (1988).

In *Sanok*, the Oregon Supreme Court held that tort claims cannot be combined with tax claims because the tort claims are affirmatively located outside the Tax Court's jurisdiction.

Here, TVKO is challenging the validity of a licensing statute and its administrative rule. There is no question that jurisdiction of that statute is in the circuit court. Also, the statute and the rule are not a precondition for determining liability for taxation. There is also no doubt that a nonlicensed promoter would be as liable for the gross-receipts tax as a licensed promoter. Further, a decision concerning the constitutionality of ORS 463.035 and OAR 250-030-0350(2) would have substantial nontax consequences. Accordingly, the court declines to exercise jurisdiction over TVKO's claims with regard to ORS 463.035 and OAR 230-030-0350(2).

*First Amendment Analysis*

The First Amendment to the United States Constitution states, in part:

> "Congress shall make no law * * * abridging the freedom of speech, or of the press * * *."

---

[6] A converse situation existed in *Finance America Corp.* where the Court of Appeals considered a tax law (ORS 307.110) in order to avoid split jurisdiction in that case. *See* 120 Or App at 32-34.

■ That prohibition on government action is made applicable to the states by virtue of the Fourteenth Amendment to the United States Constitution. *Grosjean v. American Press Co.*, 297 US 233, 243, 56 S Ct 444, 80 L Ed 660 (1936). Recognizing changes in technology, the United States Supreme Court has found that cable television is one of the forms of media or "speakers" protected by the First Amendment.

> "Cable television provides to its subscribers news, information, and entertainment. It is engaged in 'speech' under the First Amendment, and is, in much of its operation, part of the 'press.' * * *" *Leathers v. Medlock*, 499 US 439, 444, 111 S Ct 1438, 113 L Ed 2d 494, 502 (1991) (citations omitted).

As one of the forms of media protected by the First Amendment, if a tax is imposed on cable television or some portion of cable television alone, the tax is suspect.

> "[D]ifferential taxation of First Amendment speakers is constitutionally suspect when it threatens to suppress the expression of particular ideas or viewpoints. Absent a compelling justification, the government may not exercise its taxing power to single out the press. * * *" *Id.* at 447, 113 L Ed 2d at 503 (citations omitted).

■ In this case, the licensing requirements and taxes are imposed upon telecasts or transmissions of only boxing or wrestling matches. Where taxes are imposed on particular content, those taxes are subject to strict scrutiny. *See Turner Broadcasting System v. FCC*, 512 US 622, 642, 114 S Ct 2445, 129 L Ed 2d 497, 517 (1994), *aff'd on reh'g* 520 US 180, 117 S Ct 1174, 137 L Ed 2d 369 (1997).

> "* * * Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content. * * *" *Id.* (citations omitted).

Under the strict-scrutiny test, the tax of ORS 463.320 is presumed unconstitutional unless the state can show a compelling state interest.

> "A statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech. * * *" *Simon &*

*Schuster v. Crime Victims Bd.*, 502 US 105, 115, 112 S Ct 501, 116 L Ed 2d 476, 486-87 (1991) (citations omitted).

The state has a legitimate interest in regulating boxing matches in Oregon. It may enact such laws, rules, or regulations as it deems necessary or good to protect the public's health and welfare. However, the statutes in question seek to do more. ORS 463.015(13)(b) defines promoters to include those who telecast boxing or wrestling events. That definition is not directed at regulating boxing, but at regulating the publishing or dissemination of reproductions. The state's attempt to regulate the televising of a boxing match is no different than an attempt to regulate a radio broadcast or TWE's *Time* Magazine because it carries photos of the boxing match. Clearly, the burden is content-based. If no boxing or wrestling match is shown, no tax is imposed.

Defendants assert that boxing is not speech but is a form of conduct not intended to convey any message. Defendant therefore concludes that the televising of such conduct is not subject to the same standards as speech. To quote an outdated but pertinent thought, "the medium is the message." *See* Paul Levinson, *Digital McLuhan*, 35 (1999). What Defendants seek to regulate and tax is not the event but communications of and about the event. That is no different than if a newspaper or magazine had printed pictures of the boxing match.

"* * * For the power to prohibit or to regulate particular conduct does not necessarily include the power to prohibit or regulate speech about that conduct. * * *" *New Orleans Broadcasting v. U.S.*, 527 US 173, 193, 119 S Ct 1923, 144 L Ed 2d 161, 180 (1999) (citations omitted).

Defendants also contend the tax is narrowly imposed and, like a narrowly tailored restriction, passes constitutional muster. Defendants argue that the tax does not raise revenue for the general fund, but "instead pays for the regulation of the industry in which taxpayer does business." Defendants err in failing to recognize that TVKO is not in the business of promoting boxing or wrestling matches *in Oregon*. Defendants' own brief asserts:

"Plaintiff, however, has never broadcast an event from Oregon, has not alleged that it plans to broadcast an event

from Oregon, has not held a production meeting in Oregon, and does not allege that it plans to hold any production meetings in Oregon."

Thus, by Defendants' own assertions, TVKO's only connection with Oregon is selling or transmitting television images and sound of a boxing match that took place outside of Oregon. Clearly, Oregon has no jurisdiction to regulate boxing matches held outside the state. Therefore, with regard to Oregon and such boxing matches, TVKO is not in the business of providing boxing or wrestling matches but is in the business of televising programs. Notwithstanding the state's attempt to define a promoter to include holders of television distribution rights, it cannot change the facts.

■ In summary, a tax imposed on television transmissions of boxing matches held outside of Oregon violates the First Amendment to the United States Constitution. Boxing matches that take place in New York, the Philippines, or Africa are clearly beyond Oregon's jurisdiction to regulate. The televising of such a boxing match is not promotion of boxing, subject to regulation by Oregon. The state's imposition of a tax on such can only be intended to regulate communication, something the state may not do in the absence of a compelling interest. It has shown no such interest. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is granted in part and denied in part, and

IT IS FURTHER ORDERED that Defendants' Cross-Motion for Summary Judgment is denied. Costs to neither party.