Argued and submitted May 7, judgments of the Tax Court affirmed July 24, 2003

# TVKO,
a subdivision of Home Box Office,
a division of Time Warner Entertainment Company, L.P.,
a Delaware limited partnership,
*Appellant,*

*v.*

Leron R. HOWLAND,
Superintendent of the Oregon Department of State Police;
Adolfo Akil, Arthur W. Crews,
Frank J. Pedrojetti, F. Louis Rios, M.D.,
and Gregory A. Smith,
Members of the Oregon State Boxing
and Wrestling Commission,
*Respondents.*

(OTC 4445; SC S48926)

73 P3d 905

William F. Gary, of Harrang Long Gary Rudnick PC, Salem, argued the cause for appellant. With him on the briefs were James E. Mountain, Jr., and Bernard Nash and Maria Colsey Heard of Dickstein Shapiro Morin & Oshinsky LLP, Washington D.C.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents. Stephen K. Bushong and Christina M. Hutchins, Assistant Attorneys General, and Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General filed the briefs for respondents.

Neil D. Kimmelfield, of Ball Janik LLP, Portland, filed a brief on behalf of *amicus curiae* Oregon Cable Telecommunications Association.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.

DE MUNIZ, J.

## DE MUNIZ, J.

This case began in the Oregon Tax Court as an action for a declaratory judgment. The central issue involves the constitutionality of a particular tax that the State of Oregon levied on certain pay-per-view telecasts that plaintiff broadcast. The Tax Court ruled in plaintiff's favor on that underlying issue, and the correctness of that ruling is not before us. Instead, plaintiff asks this court to decide two ancillary issues: (1) whether the Tax Court improperly limited the declaratory relief that it afforded plaintiff and (2) whether that court improperly denied plaintiff's motion for attorney fees and costs. ORS 305.445. For the reasons that follow, we affirm the Tax Court's judgments.

Plaintiff TVKO is a subdivision of Home Box Office (HBO) that produces and distributes televised pay-per-view sporting events through local cable operators. Defendants are the Superintendent of the Oregon State Police and the members of the Oregon Boxing and Wrestling Commission who, together in their official capacity, administer the statutes regulating professional boxing and wrestling in Oregon.[1]

In March 1999, plaintiff broadcast a pay-per-view boxing match from New York City and distributed the program to cable operators across the country. In Oregon, the event generated 4,804 subscription orders. In accordance with ORS 463.320(3),[2] the commission demanded that plaintiff pay a gross-receipts tax of $14,450.46 on the event.

---

[1] ORS 463.113 created the Oregon State Boxing and Wrestling Commission as part of the Department of State Police. As a result, the Superintendent of State Police plays various roles in the functions of the commission including, among other things, appointing the commission's five members. See ORS 463.125 (so stating).

[2] ORS 463.320(3) provides:

"Any person licensed under this chapter who holds the distribution rights of a closed circuit telecast of a boxing or wrestling event that occurs within or outside this state and who sells the rights to a cable system operator in this state shall within 30 days after the telecast event:

"(a) File with the superintendent a written report on a form provided by the superintendent. The report shall include the number of orders sold by the cable system operator to its customers in this state and the face value of those orders.

"(b) Pay a tax equal to six percent of the face value of the orders sold by the cable system operator to its customers in this state. The person shall pay the

Plaintiff declined to pay the tax and brought an action under the Uniform Declaratory Judgments Act, ORS 28.010 to 28.160, and 42 USC section 1983, seeking declaratory and injunctive relief. Plaintiff moved for summary judgment arguing, *inter alia*, that the state's tax violated plaintiff's First Amendment free speech rights.

The Tax Court agreed with plaintiff. Although it acknowledged that the state had a legitimate interest in regulating boxing matches in Oregon, the court held that the statute at issue did more than that: it regulated the dissemination of images reproduced from boxing matches. What the state sought to tax, the court concluded, was not the event itself, but communications of and about the event.

The Tax Court then took issue with defendants' argument that the tax was constitutional because it did not raise revenue for the general fund, but "instead[,] pa[id] for the regulation of the industry in which taxpayer [did] business." The court concluded:

> "Defendants err in failing to recognize that [plaintiff] is not in the business of promoting boxing or wrestling matches *in Oregon*. Defendant's own brief asserts:
>
>> " 'Plaintiff, however, has never broadcast an event from Oregon, has not alleged that it plans to broadcast an event from Oregon, has not held a production meeting in Oregon, and does not allege that it plans to hold any production meetings in Oregon.'
>
> "Thus by Defendant's own assertions, [plaintiff's] only connection with Oregon is selling or transmitting television images and sound of a boxing match that took place outside of Oregon. Clearly, Oregon has no jurisdiction to regulate boxing matches held outside the state."

*TVKO v. Howland*, 15 OTR 335, 345-46 (2001) (emphasis in original).

Ultimately, the Tax Court granted plaintiff's summary judgment motion, in part, stating:

---

tax by cashier's check or money order payable to the department and attached to the report required under paragraph (a) of this subsection."

> "In summary, a tax imposed on television transmissions of *boxing matches held outside of Oregon* violates the First Amendment of the United States Constitution. Boxing matches that take place in New York, the Phillippines, or Africa are clearly beyond Oregon's jurisdiction to regulate. The televising of *such a boxing match* is not promotion of boxing, subject to regulation by Oregon. The state's imposition of a tax on such can only be intended to regulate communication, something the state may not do in the absence of a compelling interest. It has shown no such interest."

*Id.* at 346 (emphasis added).

Both parties subsequently submitted proposed forms of the final declaratory judgment. Plaintiff's version broadly worded the judgment and, in effect, declared the tax to be unconstitutional *vis-à-vis any* pay-per-view boxing or wrestling event seen in Oregon:

> "The provisions of ORS 463.320, subsections (3), (4), and (5), that impose a gross receipts tax on telecasts of boxing or wrestling events are unconstitutional, in violation of the First Amendment to the United States Constitution, applicable to defendants through the Fourteenth Amendment[.]"

In contrast, defendants offered a narrowly drawn version that applied to only out-of-state broadcasts, such as the one transmitted by plaintiff giving rise to this case:

> "The provisions of ORS 463.320 that impose a gross-receipt tax on telecasts or transmissions *of only out-of-state boxing or wrestling events* are unconstitutional, in violation of the First Amendment to the United States Constitution applicable to defendants through the Fourteenth Amendment, and not enforceable."

(Emphasis added.) The Tax Court entered defendants' proposed judgment.

As the prevailing party, plaintiff moved for attorney fees and costs, relying on ORS 182.090[3] as well as on the

---

[3] ORS 182.090 provides:

"(1) In any civil judicial proceeding involving as adverse parties a state agency, as defined in ORS 291.002, and a petitioner, the court shall award the petitioner reasonable attorney fees and reasonable expenses if the court finds in favor of the petitioner and also finds that the state agency acted without a reasonable basis in fact or in law.

inherent equitable power of the Tax Court. Plaintiff argued that the state unreasonably had sought to enforce the tax because the statute was unconstitutional on its face and courts elsewhere had declared "virtually identical statutes" unconstitutional. Plaintiff also argued that the court should exercise its power in equity to award fees and costs because plaintiff had acted to "vindicate vitally important free speech rights of all telecasters and Oregonians."

The Tax Court denied plaintiff's motion. It acknowledged that state agencies do have authority to question the constitutionality of statutes. The court noted, however, that defendants in this case had conferred with the Oregon Department of Justice (DOJ) before continuing their enforcement efforts and that DOJ had advised them that the tax was constitutional. Citing *State v. Mott*, 163 Or 631, 640, 97 P2d 950 (1940), the Tax Court concluded that state officers were "entitled to follow the opinions of the Attorney General and, when acting in good faith, will be protected, even though that opinion may be in error." *TVKO v. Howland*, 15 OTR 402, 408 (2001).

Regarding its equitable power to award fees, the Tax Court determined that, under *Armatta v. Kitzhaber*, 327 Or 250, 287, 959 P2d 49 (1998), three conditions must exist before such an award is warranted: (1) the proceeding must be one in equity;[4] (2) the party requesting fees must be the prevailing party; and (3) the party must have sought to vindicate a constitutional right applying to all citizens without any gain peculiar to itself. Applying that rule to plaintiff, the Tax Court concluded:

---

"(2) Amounts allowed under this section for reasonable attorney fees and expenses shall be paid from funds available to the state agency. The court may withhold all or part of the attorney fees from any award to a petitioner if the court finds that the state agency has proved that its action was substantially justified or that special circumstances exist which make the award of all or a portion of the attorney fees unjust.

"(3) As used in this section, 'civil judicial proceeding' means any proceeding, other than a criminal proceeding as defined in ORS 131.005(7), conducted before a court of this state."

[4] In *Swett v. Bradbury*, 335 Or 378, 389, 67 P3d 391 (2003), decided after the Tax Court issued its decision in this case, this court concluded that the requirement that the proceeding be one in equity was of "limited utility" in determining whether to award attorney fees.

"It is the element of self interest that disqualifies TVKO here. TVKO contested licensing and tax provisions that only apply to those who promote a boxing or wrestling match. The benefits of the court's decision flow largely to TVKO and other members of its industry, while the public is only indirectly benefitted. * * * If the interest that a litigating party seeks to vindicate is 'individualized,' 'peculiar,' or 'pecuniary,' it will not qualify as the type of interest justifying an award of attorney fees under the [equitable principles contained in *Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975)]. * * * Accordingly, TVKO is not entitled to an award of attorney fees under the court's inherent equitable powers."

*TVKO*, 15 OTR at 410. This appeal by plaintiff followed.

■       Plaintiff argues that, in declaring the tax levied against it under ORS 463.320(3) unconstitutional, the Tax Court committed legal error in limiting that declaration to taxes on telecasts of out-of-state boxing and wrestling events. Plaintiff asserts that the parties argued the case in the Tax Court as a facial challenge to the statute, the court analyzed it as a facial challenge and, on summary judgment, the Tax Court decided the issue in plaintiff's favor as a facial challenge. It follows, plaintiff reasons, that the Tax Court should have issued a declaratory judgment of comparable scope. For the reasons that follow, we conclude that the Tax Court did not commit legal error in entering the more limited judgment.

■       This court consistently has held that courts cannot issue declaratory judgments in a vacuum; they must resolve an actual or justiciable controversy. *See Mitchell Bros. Truck Lines v. Lexington*, 287 Or 217, 219, 598 P2d 294 (1979); *Oregon Medical Assn. v. Rawls*, 276 Or 1101, 1107, 557 P2d 664 (1977); and *Hale v. Fireman's Fund Ins. Co. et al*, 209 Or 99, 103, 302 P2d 1010 (1956) (all so stating). To be justiciable, a controversy must involve a dispute based on present facts rather than on contingent or hypothetical events. *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982); *see also Drake v. City of Portland*, 172 Or 558, 599, 143 P2d 213 (1943) (courts will not render declaratory judgment where plaintiff's rights are contingent on event that no one can predict and that might never occur).

■    As a result, declaratory relief is available "only when it can affect *in the present* some rights between the parties[.]" *Barcik v. Kubiaczyk*, 321 Or 174, 188, 895 P2d 765 (1995) (emphasis in original). That tenet applies with particular force when issues involve questions of constitutional importance. In those situations, we have cited with approval the United States Supreme Court's policy of " 'avoiding constitutional decisions until the issues are presented with clarity, precision and certainty,' " declining, in the process, to exercise jurisdiction when " 'prematurity and comparative abstractness,' or 'uncertainness' " would leave this court without a concrete basis for a decision. *Rawls*, 276 Or at 1107, *quoting Rescue Army v. Municipal Court*, 331 US 549, 574-76, 67 S Ct 1409, 91 L Ed 2d 1666 (1947).

Plaintiff, however, argues that, under *Brown*, the substance of a justiciable controversy can lie in the interpretation of a statute and a determination of a state officer's official duties thereunder, rather than an actual application of a statute in a particular circumstance. In *Brown*, an agency that was conducting a contested case hearing requested advice from the Attorney General's office. Two assistant attorneys general subsequently met in private with the agency's director and a hearings officer and did not notify the opposing litigants. As a result of that meeting, the Oregon State Bar (Bar) received an ethics complaint against the Attorney General and issued an opinion that the meeting had violated several provisions of the Code of Professional Responsibility.

The Attorney General subsequently brought an action against the Bar seeking a declaratory judgment regarding the Attorney General's authority under ORS 180.220[5] to give private, *ex parte* advice to agencies involved in contested cases. The trial court granted the Bar's motion for summary judgment based, in part, on the ground that the Attorney General had failed to present a justiciable controversy involving present facts. This court reversed that decision, stating:

---

[5] ORS 180.220 enumerates the powers and duties of the Department of Justice, the agency headed by the Attorney General. Among them is the responsibility for all legal business of state agencies requiring the services of an attorney.

"The court is requested to consider a specific set of facts—whether plaintiff may give advice upon request to agencies in contested cases where plaintiff's office is not involved in the case, agency rules do not prohibit the conduct and the recipient does not have authority to issue binding orders. *The controversy involves present facts, the plaintiff's existing statutory duty.* * * * The controversy does not concern the specific conduct of having given advice to the [agency director] *but concerns the plaintiff's continuing state-wide official conduct under the statutes.*"

*Brown*, 293 Or at 450 (emphasis added).

■ In *Brown*, this court concluded that the issue that the plaintiff raised was justiciable because it called for the interpretation of a statute and implicated a current dispute over the plaintiff's compliance with statutory duties that were part of his duties as Attorney General. The court emphasized that individuals assuming that office immediately become responsible for those duties and that the dispute over the plaintiff's fulfillment of his duties was not hypothetical or prospective. *Brown*, therefore, stands for the unremarkable proposition that, when state officers seek judicial declarations regarding their duties, the statutory responsibilities of their office provide the present facts necessary for a justiciable controversy and, when such a controversy is present, a court only has limited discretion to decline to adjudicate it. Nothing in *Brown*, however, compels the conclusion that it was legal error for the Tax Court to confine its judgment in this case to the actual controversy between the parties.

■ As *Brown* demonstrates, Oregon courts are accorded some discretion in fashioning a judgment under the declaratory judgment statute. *See id.* at 451 (courts have some discretion in granting declaratory judgments). Historically, in declaratory judgment cases involving the constitutionality of a statute, the discretion accorded a court in its adjudicative function has been guided, in part, by the view that courts should avoid making "constitutional decisions until issues are presented with clarity, precision and certainty[.]" *Rawls*, 276 Or at 1107 (internal quotation marks and citation omitted). The underpinnings of that form of judicial restraint

were expressed by this court in *Oregon Cry. Mfgs. Ass'n v. White*, 159 Or 99, 109, 78 P2d 572 (1938), as follows:

> "Deciding hypothetical cases is not a judicial function. Neither can courts, in the absence of constitutional authority, render advisory opinions. A declaratory judgment has the force and effect of an adjudication. *Hence, to invoke this extraordinary statutory relief there must be an actual controversy existing between parties.* Particularly should this be so when a court is asked to declare that a co-ordinate branch of government has exceeded its power by passing a statute in violation of the fundamental or basic law. *No court should declare an act unconstitutional unless it is necessary to do so.*"

(Emphasis added; citation omitted.)

Here, with regard to pay-per-view events originating in Oregon, plaintiff presented only a tentative—and hence, uncertain—constitutional claim to the Tax Court. Nothing in the record indicated that plaintiff ever had broadcast a pay-per-view boxing or wrestling event from Oregon, made plans to do so, or even considered such an enterprise. Thus, it was unnecessary in this case for the Tax Court to rule on the constitutionality of the statute in that respect. The fact that plaintiff labeled and argued its claim as a facial challenge to the statute did not prohibit the Tax Court from adjudicating only the more narrow and actual constitutional controversy between the parties. We hold that the Tax Court did not err in limiting its judgment accordingly.

Plaintiff also asserts that the Tax Court erred as a matter of law by issuing a final judgment that was significantly narrower than its summary judgment order. Plaintiff contends that the Tax Court's summary judgment ruling invalidated the tax with respect to both in-state and out-of-state telecasts, a decision that the final judgment should have reflected. However, that assertion is not borne out in the text of the Tax Court's summary judgment order. As we noted above, the Tax Court expressly predicated its order on the fact that plaintiff's boxing matches all had originated outside Oregon, *i.e.*, beyond the state's regulatory jurisdiction. To the extent that plaintiff argues that an inconsistency

exists between the Tax Court's summary judgment order and its final judgment, that argument is not correct.[6]

■ Finally, plaintiff also contends that the Tax Court erred when it denied plaintiff's motion for attorney fees and costs. Plaintiff first reiterates its argument that defendants acted without a reasonable basis in fact or in law. ORS 182.090(1). We disagree. The fact that an agency's position on a matter is legally incorrect does not make it unreasonable as a matter of law. *McKean-Coffman v. Employment Div.*, 314 Or 645, 649-50, 842 P2d 380 (1992). *See also Market Transport v. Maudlin*, 301 Or 727, 742, 725 P2d 914 (1986) (where correct application of law to the facts at hand was unclear, court could not state that agency's order lacked reasonable basis in law or fact).

In this case, plaintiff raised an issue of first impression in this jurisdiction. Although it is true that other jurisdictions had addressed similar issues, those decisions were not binding precedent in Oregon and, therefore, did not establish that defendants acted unreasonably in the face of settled law. Moreover, in the course of enforcing the tax, defendants' relied—as they were entitled to do—on the advice of the Attorney General. As this court noted in *State ex rel. v. Mott*, 163 Or 631, 640, 97 P2d 950 (1940):

> "Officers acting in good faith have a right to rely on the opinion of the attorney general, as he is the officer designated by law to render such service for their guidance and protection."

If the law were otherwise, few administrators would care to assume responsibility for rendering hard decisions in matters like the one presented here. Plaintiff has not demonstrated that defendants' enforcement of the tax in this instance lacked a reasonable basis in law or fact.

■ Plaintiff also argues that the Tax Court erred when it declined to exercise its inherent equitable authority to award attorney fees. Plaintiff points out that its action in this

---

[6] Because we do not find plaintiff's factual predicate for its argument to be well taken, we need not, and do not, address the merits of plaintiff's legal theory that a trial court's final judgment must mirror any interlocutory order awarding summary judgment.

case has vindicated important First Amendment rights for all telecasters. Although plaintiff acknowledges that the Tax Court's decision has served plaintiff's own financial interests, plaintiff argues that those interests are ones shared with all affected telecasters and, therefore, not peculiar to itself. In plaintiff's view, that fact should trump the Tax Court's conclusion under *Armatta*, 327 Or 250, that plaintiff's own self-interest nullified its claim to equitable fees and costs.

In *Armatta*, however, this court wrote:

> "Finally, in filing the action, the party requesting attorney fees must have been seeking to 'vindicat[e] an important constitutional right *applying to all citizens without any gain peculiar to himself,*' as opposed to vindicating '*individualized and different interests,*' or '*any pecuniary or other special interest of his own aside from that shared with the public at large.*'"

*Id.* at 287 (emphasis added; internal citations omitted). In this case, plaintiff and the assorted telecasters that it purports to represent are not "all citizens"; neither is it likely that their numbers would allow them to pass for a significant part of the "public at large." Plaintiff also has secured for itself a special (and substantial) pecuniary interest not shared with the general public. *See Dennehy v. Dept. of Rev.*, 308 Or 423, 427 781 P2d 346 (1993) (personal pecuniary interest disqualified moving party from award of attorney fees under court's inherent equitable authority to award attorney fees). Under *Armatta* and *Dennehy*, the Tax Court did not err in declining to award equitable attorney fees and costs to plaintiff.

The judgments of the Tax Court are affirmed.